731 So.2d 973 (1999)
Mark L. CHAPLAIN, et al.
v.
AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, ABC Insurance Company, et al.
No. 98-CA-1372.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 1999.
Daniel L. Daboval, Eric J. Simonson, Lou Anne Milliman, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, Louisiana, Counsel for Plaintiffs/Appellants.
Christopher J. Aubert, David J. Schexnaydre, Aubert & Pajares, Metairie, Louisiana, Counsel for Defendants/Appellees.
*974 Robert J. Young, III, Young, Richaud & Myers, New Orleans, Louisiana, Counsel for Defendants/Appellants.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MOON LANDRIEU, and Judge JAMES F. McKAY, III.
LANDRIEU, Judge.
In February of 1995, the plaintiff, a minor, was injured when he came in contact with a rope strung across a walkway behind the bleachers at Pan American Stadium in City Park. The New Orleans City Park Improvement Association (City Park) had leased the stadium to the Orleans Parish School Board pursuant to a written lease in which the Board assumed all liability. The board, in turn, had leased the stadium pursuant to a "verbal" lease to De La Salle High School. The plaintiff was injured while attending a soccer match between De La Salle and Brother Martin High School. De La Salle was the "home" team and was allowed to keep the box office receipts for the game.
The plaintiff and his parents filed suit against the Board and its insurer, De La Salle and its insurer, and the Orleans Parish Sheriffs Office. De La Salle subsequently moved for summary judgment on the grounds that it did not have garde over the stadium at the time of the accident and that it had no duty to inspect the premises for defects that could cause injury to the paying guests attending the game.
The district court granted the motion for summary judgment. The court reasoned that De La Salle had had no duty to inspect the premises and that De La Salle could not be held strictly liable for the allegedly defective condition, because it did not have garde or custody of the stadium at the time of the accident. The School Board and the plaintiffs appeal the court's judgment.[1]
After adequate discovery, a motion for summary judgment shall be granted if there is no genuine issue as to material fact and the mover is entitled to summary judgment as a matter of law. La.Code Civ. Proc. art. 966 C(1). Though the burden of proof remains with the movant, a movant who does not bear the burden of proof at trial need only point out to the court that there is an absence of factual support for one or more of the elements essential to the adverse party's claim. La.Code Civ. Proc. art. 966 C(2). If the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id. Appellate courts must review a summary judgment de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Cressionnie v. Liberty Mut. Ins. Co., 98-0534 (La.App. 4 Cir. 4/8/98), 711 So.2d 364, writ denied, 98-1262 (La.6/19/98), 721 So.2d 476.
In an action asserting strict liability under La. Civ.Code art. 2317, the plaintiff bears the burden of proving: (1) the thing that caused injury or damage was in the care, custody and control, or garde, of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injury and/or damage were caused by the vice or defect. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990). To establish liability based on negligence under La. Civ.Code art. 2315, the plaintiff must prove: (1) the conduct in question was a cause-in-fact of the resultant harm; (2) the defendant owed a duty to the plaintiff; (3) the duty owed was breached; and (4) the risk or harm caused was within the scope of the duty breached. Fontenot v. Fontenot, 93-2479 (La.4/11/94), 635 So.2d 219.

*975 ASSIGNMENT OF ERROR NO. 1
The appellants first assign as error the court's granting of the motion for summary judgment on the issue of garde, asserting that De La Salle had entered into a lease for the stadium throughout the 1994-1995 season and that De La Salle had had sole and exclusive use of the stadium during the game. The appellants assert that De La Salle leased the stadium for the game in question, had sole and exclusive use of the stadium, sold admission tickets and derived a profit therefrom, and was provided an opportunity to inspect the stadium prior to the game. The appellants argue that the School Board was required to sub-lease the stadium to private and parochial schools pursuant to its lease with City Park.
The issue of garde was ripe for summary judgment. There is no dispute that no written lease exists between the School Board and De La Salle, wherein the latter would assume all responsibility and liability for the premises. Although the appellants cite the testimony of De La Salle's athletic director as evidencing the athletic director's access to the premises, it seems clear from the deposition excerpts in the record that someone other than De La Salle maintained control of the facility. For example, the athletic director testified that he could enter the press box, but only if there were someone from the Sheriff's Office to unlock the door. Furthermore, there is no dispute that De La Salle personnel, players, or guests could enter the stadium only one hour before commencement of the soccer game. That School Board members were required to purchase a ticket to observe the game does not prove that the School Board did not retain garde of the stadium. The athletic director testified that it was only after the accident that the School Board requested the school obtain a certificate of insurance for each game and inspect the premises before each game. The testimony of the School Board's athletic director does not contradict this testimony.
Moreover, as De La Salle argues, garde was not transferred from the School Board to it either by contract or by operation of time. Citing Mix v. Krewe of Petronius, 95-1793 (La.App. 4 Cir. 5/22/96), 675 So.2d 792, De La Salle argues that it had leased the stadium only a few hours at a time and that custody of the premises remained with the School Board.
We find Mix v. Krewe of Petronius to be controlling. In that case, the plaintiff, attending a Mardi Gras ball, suffered a broken foot when she fell on steps located in the Municipal Auditorium, a city-owned facility leased to the krewe at the time of the injury. Mix sued the city and the krewe alleging that the steps were unreasonably dangerous, because a recessed light was insufficient to show that the next step was not itself the landing and because the city, by painting the steps and the landing the same color, had caused a blending or camouflage effect that caused her to miss the step.
The Mix court held that, for an owner's strict liability to apply to a lessee or other custodian, there must be a finding that the owner transferred garde to the custodian. The court concluded the city had not transferred garde of the auditorium to the krewe at the time of the injury. It found that the krewe did not have the "right of direction and control" such as would have allowed it to change the lighting or to repaint the landing to provide a visual contrast. 95-1793, pp. 5-6, 675 So.2d at 796. The court further noted that "an owner of a thing who transfers its possession, but not its ownership, to another continues to have the garde of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer." Id., pp. 7-8, 675 So.2d at 797 (quoting Ross v. La Coste de Monterville, 502 So.2d 1026 (La.1987)). The Mix court further reasoned that garde had not been transferred to the krewe, noting that the lease term was for a matter of hours rather than months or years, that the lessee had no opportunity to inspect, *976 re-paint or reconfigure the lighting system, and that the lessee had no guardianship that would have given it the right of direction and control of the steps, landing and lighting system. In fact, the written lease prohibited the lessee from altering the facility in any way.
In the instant case, we conclude the School Board had not transferred garde of the stadium to its sub-lessee, De La Salle, at the time of the accident. The lease term was even shorter than that in Mix: two or three hours as compared to about sixteen hours in Mix. De La Salle had no reasonable opportunity to inspect the premises prior to its occupancy. De La Salle's athletic director testified that it could only occupy the stadium one hour before the start of the games and that it had to have Sheriff's Office personnel unlock the facility for access. Finally, De La Salle had no right of direction and control to make changes to the facility. Though the De La Salle athletic director stated that he would have had the rope moved had he been aware of the problem, that is not evidence De La Salle had garde of the facility, and we decline to read into this particular oral lease, or the circumstances surrounding it, any transfer of garde from the School Board to De La Salle.

ASSIGNMENT OF ERROR NO. 2
The appellants next assert the district court erred in granting summary judgment on the issue of duty to inspect the premises for defects and breach of that duty. They cite the same factors provided above as supporting a finding that De La Salle had a duty to inspect the premises before each game. The appellants further argue that De La Salle, who charged its guests for admission to the facility, had an independent duty to make the premises safe for its customers. As part of this duty, the appellants contend, De La Salle, owed its paying guests the duty of inspecting the premises for defects before admitting any guest to the facility.
De La Salle counters that it had no duty to inspect the premises and that there is no evidence that any conduct on its part was a cause-in-fact of the accident. It argues that it was given access to the stadium one hour before the games and that its athletic director did not place the rope across the walkway or even see the obstructed walkway.
The appellants rely on Miller v. Great Atlantic & Pacific Tea Co., 510 So.2d 695 (La.App. 1 Cir.), writ denied, 513 So.2d 1213 (La.1987), for the proposition that De La Salle owed a duty to its patrons independent of any duty it owed pursuant to its oral lease with the School Board and/or the School Board's responsibility under its lease with City Park. In Miller, the defendant grocery store had leased the building and parking lot from the owner. The lease provided that the lessor was responsible for the parking lot, where the plaintiff had tripped in a pothole. The First Circuit observed that the lease between the grocery store and the owner did not affect the independent duty the grocery store owed to its customers. The court concluded that the grocery store, which regularly inspected the lot for hazards and reported them to the lessor, had breached the duty owed its customers by failing to provide a safe entrance and exit, because the store either knew or should have known of the existence of the pothole.
We initially note that the case relied upon by the First Circuit in Miller, Bolin v. National Tea Co., 359 So.2d 690 (La. App. 1 Cir.), writ denied, 362 So.2d 577 (La.1978), simply held that the grocery store, which owned the property, owed a duty to its customers to keep the premises in a reasonably safe condition and could not allow to exist hazardous conditions of which it had actual or constructive notice. Moreover, we find the Miller case factually inapposite to the case before us. There, the store had leased the premises for a significant term and had undertaken the responsibility of inspecting the parking lot and reporting any hazards to the lessor for repair. Here, the sub-lessee occupied the stadium only for a few hours and only on *977 occasion. De La Salle was given no meaningful opportunity to inspect the premises before its guests arrived. Clearly, the School Board, given the multiple and frequently-changing sub-lessees, was in the better position of inspecting the premises and ensuring that they were free of hazards.
We agree with the district court that neither the plaintiffs nor the School Board could establish in this case that De La Salle owed a duty to its guests to inspect the premises for defects prior to each game. Absent any genuine issue as to material fact, De La Salle was entitled to summary judgment as a matter of law.
For the reasons set forth above, we affirm the district court's summary judgment in favor of De La Salle High School.
AFFIRMED.
NOTES
[1] The district court designated the judgment as a final and appealable judgment for purposes of La.Code Civ. Proc. art. 1915 B, as amended by Acts 1996, No. 483, § 1, effective July 1, 1997.