| | | |
|---|---|---|
| **ANDREW BRADLEY TOWBIN** | * | **NO. 2026-CA-0152** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **JOHN T. FULLER AND** | * | **FOURTH CIRCUIT** |
| **DARREN P. LOMBARD IN HIS** | | |
| **OFFICIAL CAPACITY AS** | * | **STATE OF LOUISIANA** |
| **CLERK OF COURT FOR** | | |
| **CRIMINAL DISTRICT COURT** | * * * * * * * | |
| **FOR THE PARISH OF** | | |
| **ORLEANS** | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2026-01385, DIVISION "N-8"
Honorable Yolanda Grinstead (Pro Tempore), Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *
(Court composed of Chief Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase, Judge Dale N. Atkins, Judge Rachael D. Johnson, Judge Karen K. Herman, Judge Nakisha Ervin-Knott, Judge Monique G. Morial, Judge Pro Tempore Dennis R. Bagneris, Sr.)


 **BELSOME, C.J. DISSENTS AND ASSIGNS REASONS.**
 **LOBRANO. J., DISSENTS AND ASSIGNS REASONS**
 **JENKINS, J., DISSENTS AND ASSIGNS REASONS**
 **ATKINS, J., DISSENTS WITH REASONS.**

Stephen M. Petit, Jr.
ATTORNEY AT LAW
1939 Hickory Avenue, Suite 208
Harahan, LA 70123

Scott L. Sternberg
Marcia Suzanne Montero
STERNBERG NACCARI & WHITE, LLC
935 Gravier Street, Suite 2020
New Orleans, LA 70112


        COUNSEL FOR PLAINTIFF/APPELLEE


Jerome W. Matthews, Jr.

Matthews Law Office
1901 Manhattan Blvd., Bldg D
Harvey, LA 70058

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**MARCH 3, 2026**
**AT 1:15 P.M.**

This election matter concerns whether Appellant, defendant John T. Fuller, should be disqualified as a judicial candidate for Criminal District Court, Section J, Orleans Parish. Appellant seeks review of the February 25, 2026 district court judgment, granting Appellee's, plaintiff Andrew Bradley Towbin's, petition to disqualify Mr. Fuller as a judicial candidate in an upcoming May 2026 election. After a review of the law, applicable facts and the judgment granting Mr. Towbin's petition to disqualify, we affirm the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

Mr. Fuller executed and filed a notarized Louisiana Secretary of State Notice of Candidacy form on February 13, 2026. The form included a certification that Mr. Fuller filed his federal and state income tax returns "for each of the previous five tax years."

Thereafter, on February 20, 2026, Mr. Towbin—a resident of and registered voter in Orleans Parish—filed a petition objecting to Mr. Fuller's candidacy, pursuant to La. Rev. Stat. 18:492. Mr. Towbin alleged Mr. Fuller falsely certified that he filed his state taxes for one or more of tax years from 2020 to 2024. Mr. Towbin alleged that the Louisiana Department of Revenue's ("LDR") response to

a public records request indicates Mr. Fuller had not filed the required state tax forms for one or more of the tax years from 2020 to 2024 at the time he filed his Notice of Candidacy. Thus, Mr. Towbin contends Mr. Fuller's certification was false. Mr. Fuller did not file a brief or memorandum in opposition to Mr. Towbin's petition in the trial court.

Trial on the objection to candidacy was held on February 25, 2026. At trial, both parties testified as well as Mr. Fuller's accountant, Tracy Madison, and his secretary, Danielle Taylor.

*Testimony*

Mr. Towbin testified that he is an Orleans Parish registered voter. He explained that he challenged Mr. Fuller's candidacy because Mr. Fuller did not file his 2020 taxes, which Mr. Towbin confirmed by submitting a public records request to the LDR. He explained that the LDR's response indicated Mr. Fuller did not file his taxes "in the year of 2020," but that his state returns from 2021 through 2024 were filed. Therefore, he believed Mr. Fuller should be disqualified from the judicial race on that basis. Mr. Towbin offered three exhibits into evidence, and they were admitted: his Secretary of State voter identification information; LDR custodian Brandea P. Averett's affidavit in response to his public records request; and Mr. Fuller's Notice of Candidacy.

Mr. Madison testified that to the best of his knowledge Mr. Fuller's 2020 state tax returns were submitted and filed on Mr. Fuller's behalf, but that Ms. Taylor actually mailed Mr. Fuller's returns. He explained that his practice was to submit the completed returns with instructions for filing to Mr. Fuller. He stated that he was never notified by the LDR that Mr. Fuller's 2020 returns were not filed, nor was he notified of any liabilities or delinquent tax returns of Mr. Fuller

2

for tax year 2020. He further testified that normally the LDR would make contact if there were delinquent tax returns and tax liability was owed. He also testified that he did not receive notification that the Internal Revenue Service ("IRS") and State tax submissions were not received by the IRS and State, respectively.

Mr. Madison explained that he did not take any affirmative steps to verify whether Mr. Fuller's 2020 taxes were filed. He further testified that because there were no 1099s for that year, it was unlikely that he would have received notice from the LDR. He transmitted the prepared filings to Mr. Fuller's office via email.

Mr. Madison and Ms. Taylor testified that in 2020, as well as other years, Mr. Fuller's annual tax filing routine involved Ms. Taylor gathering Mr. Fuller's financial documents for submission to Mr. Madison. They further corroborated that Mr. Madison prepared Mr. Fuller's federal and state tax returns and submitted them to Ms. Taylor, who gave Mr. Fuller the prepared tax returns for signing. Ms. Taylor testified that she then prepared the signed returns for mailing. She testified that she dropped off the returns in United States Post Office's mailroom in the office building where Mr. Fuller's office is located.

Mr. Fuller explained that he attempted to ensure the delivery of his 2020 Louisiana state tax returns to the Department of Revenue by making sure Ms. Taylor gave Mr. Madison the materials needed to prepare Mr. Fuller's returns, and he ensured that Ms. Taylor postmarked the prepared returns and mailed them. Mr. Fuller testified that Mr. Madison billed him for preparing his 2020 federal and state returns. He recounted paying Mr. Madison for this work. Mr. Fuller further recalled giving Ms. Taylor his 2020 federal and state returns to mail and observing her prepare the returns to be mailed. He clarified that he did not watch her actually mailing the returns in the office building's mailroom. He explained that he had no

3

reason to believe that Ms. Taylor did not mail his 2020 state tax return. Mr. Fuller further explained that from January 1, 2020, until the day of trial he had not received any notices or mailings from the LDR regarding delinquent or un-filed tax returns for the 2020 tax year. He testified that he maintained a consistent mailing address with the State of Louisiana from 2020 through 2024 and that Mr. Madison served as his accountant and tax preparer for those same years.

On cross-examination, Mr. Fuller testified that his 2020 Louisiana tax return was not mailed certified but was handled through regular mail. Mr. Fuller further explained that between the time he was served with Mr. Towbin's petition and the day of trial, he did not request a stamped copy of his 2020 Louisiana state return from the LDR nor did he request anyone go to Baton Rouge to request a stamped copy of his 2020 Louisiana state tax returns. He stated that it was his practice to have both his federal and state returns prepared at the same time by Mr. Madison. He never received information from the IRS that his 2020 tax return was not received nor did he receive notification that either of his 2020 tax filings did not make it to their desired destination.

On re-direct examination, Mr. Fuller testified to being paranoid about ensuring his taxes were filed and checking with Mr. Madison via text prior to executing the Notice of Candidacy. Upon receiving Mr. Madison's response confirming that all of Mr. Fuller's filings had been submitted, with the exception of an amended filing for 2022, Mr. Fuller signed the Notice of Candidacy. He conveyed that it was his honest belief at the time his Notice of Candidacy was filed that his tax returns for the five proceeding years have been filed.

Lastly, he recalled getting a refund from the IRS and the State for the 2020 tax year, which was rare for him to receive. However, Mr. Fuller was unable to

4

produce any documentation showing he received a credit or refund from the State for the 2020 tax year when questioned by the district court. Mr. Fuller's exhibits introduced at trial were a copy of his 2020 tax return prepared by Mr. Madison, Mr. Madison's invoice to Mr. Fuller for his 2019 and 2020 tax services; a screenshot of a text exchange between Mr. Madison and Mr. Fuller regarding Mr. Fuller's tax filings on date the Notice of Candidacy was filed; and a July 2, 2024 email from Mr. Madison to Mr. Fuller stating that his 2020 taxes were filed.

At the conclusion of the trial, the district court granted Mr. Towbin's petition and disqualified Mr. Fuller, reasoning:

> Considering the law and evidence, the Court must disqualify Mr. Fuller as a candidate for Criminal District Court Judge, Section C -- Section J. Election laws must be interpreted to give the electorate the widest possible choice of candidates. Therefore, the plaintiff objecting to candidacy bears the burden of proving that the candidate is disqualified.
>
> In this case the Court finds that the plaintiff has met his burden of proof and made a prima facie case, which Defendant has not rebutted.
>
> Ms. Danielle Taylor, secretary to Defendant, testified that she put the returns in the US mail. However, there was no evidence that the returns were received by LDR as required by *Russo versus Burns*, a Louisiana Supreme Court case, which is on point with the facts in this case.
>
> Defendant has no documentation that the defendant ever received a credit or refund for the tax year 2020, which would have been indicated in the defendant's tax returns. And it also would have indicated that the 2020 taxes had actually been filed.

The district court rendered judgment the same day. This timely appeal followed.

## ASSIGNMENTS OF ERROR

Appellant raises five assignments of error on appeal:

1. The district court erred as a matter of law in determining that tax year 2020 falls within "the previous five tax years" for a candidate who qualified on February 13, 2026.

5

2. The district court erred in finding that Mr. Towbin established a prima facie case under La. Rev. Stat. 18:492(A)(7) and in shifting the burden to Appellant.

3. Alternatively, assuming arguendo that 2020 falls within the statutory period, the district court erred as a matter of law and committed manifest error by finding that Mr. Fuller falsely certified his tax compliance.

4. The district court misapplied the governing legal standard by treating the LDR's actual receipt as indispensable, rather than evaluating the objective evidence of mailing, routine office practice, and justified belief reflected in this record.

5. The district court's factual findings and oral reasons were clearly erroneous because they overlooked admitted documentary evidence and disregarded the controlling rule that doubts must be resolved in favor of candidacy.

## STANDARD OF REVIEW AND APPLICABLE LAW

A district court's findings of fact are reviewed under a manifest error standard of review, while issues of law are reviewed for determination of whether the interpretive decision is legally correct. *Jefferson Fin. Fed. Credit Union v. New Orleans Libations & Distilling Co.*, LLC, 2022-0123, p. 3 (La. App. 4 Cir. 10/31/22), 351 So. 3d 783, 785 (citing *Smith v. Charbonnet*, 2017-0634, p. 5 (La. App. 4 Cir. 8/2/17), 224 So. 3d 1055, 1059). "[I]f the decision of the [district] court is based upon an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court." *Henry v. Bell*, 2023-00543, p. 4 (La. App. 4 Cir. 8/25/23), 371 So. 3d 566, 569 (citation omitted).

"Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified." *Landiak v. Richmond*, 2005-0758, pp.

6

6-7 (La. 3/24/05), 899 So. 2d 535, 541 (citing *Becker v. Dean*, 2003-2493, p. 7 (La. 9/18/03), 854 So. 2d 864, 869; *Russell v. Goldsby*, 2000-2595, p. 4 (La. 9/22/00), 780 So.2d 1048, 1051; *Dixon v. Hughes*, 587 So .2d 679, 680 (La. 1991); *Messer v. London*, 438 So.2d 546 (La.1983)). When determining "whether the person objecting to candidacy has carried his burden of proof," courts "must liberally construe the laws governing the conduct of elections 'so as to promote rather than defeat candidacy.'" *Id*., 2005-0758, p. 7, 899 So. 2d at 541 (quoting *Becker,* 03-2493, p. 7, 854 So.2d at 869; *Russell*, 2000-2595, p. 4, 780 So. 2d at 1051; *Dixon*, 587 So.2d at 680). The burden of proof shifts to the challenged candidate after the objecting party has established a prima facie case. *Thomas v. Griffin-Clark*, 2025-0449, p. 5 (La. App. 4 Cir. 7/25/25), 417 So. 3d 1250, 1254.

## DISCUSSION

In his first assignment of error, Mr. Fuller contends that the 2020 tax year does not fall within "the previous five tax years" for a candidate who qualified on February 13, 2026. We disagree.

Firstly, we are precluded from considering an issue raised for the first time on appeal. "Appellate courts generally find it inappropriate to consider an issue raised for the first time on appeal that was not plead, urged, or addressed in the court below." *Graubarth v. French Mkt. Corp.*, 2007-0416, p. 5 (La. App. 4 Cir. 10/24/07), 970 So. 2d 660, 664 (citing *Johnson v. State*, 2002-2382, p. 4 (La. 5/20/03), 851 So. 2d 918, 921). Mr. Fuller did not challenge the inclusion of the 2020 tax filing year when Mr. Towbin offered Ms. Averett's affidavit into evidence at trial. Mr. Fuller also did not challenge Ms. Averett's affidavit when it was admitted into evidence. Hence, this Court will not consider this argument.

7

Even if this were an issue warranting our *de novo* review, we do not find that there was a legal error in counting the 2020 tax year as part of the "previous five tax years" from when Mr. Towbin requested the records on February 19, 2026. There is no legal support for Mr. Fuller's interpretation that "tax year" means "calendar year."

We defer to the LDR, the taxing authority, in its interpretation of "tax year." In support of his challenge to Mr. Fuller's candidacy, Mr. Towbin produced and entered into evidence an affidavit[1] of LDR custodian Brandea P. Averett. The affidavit states that "[o]n February 19, 2026, [LDR] received a public records request seeking confirmation of whether [Mr. Fuller] has filed tax returns with [LDR] for the preceding five (5) years." Included in this affidavit is a table generated by the LDR featuring the tax filing years 2020-2024 and confirming receipt of Mr. Fuller's tax filings for each year besides 2020.

Mr. Fuller's argument that 2020 should not be included in the "previous five tax years" from the February 19, 2026 date insinuates that Mr. Towbin specifically requested Mr. Fuller's tax records from the years 2020-2024. The record does not show what wording Mr. Towbin used in making his request. However, the language of Ms. Averett's affidavit makes clear that Mr. Towbin simply requested records "for the preceding five (5) years." The LDR determined that 2020 was within the "previous five tax years" from the February 19, 2026 date. We defer to the LDR's interpretation of "previous five tax years." For this Court to determine that the 2020 tax year should not have been included would be to challenge the

---

[1] According to La. R.S. 47:1508(A)(4)(b), "[i]n lieu of live testimony, a properly executed affidavit issued by the secretary of the Department of Revenue or his designee shall serve as sufficient confirmation as to the accuracy of the records and files of the secretary of the Department of Revenue for such purposes."

LDR's routine method for calculating "the previous five tax years," which we do not feel is proper. Mr. Fuller's first assignment of error lacks merit.

In his second assignment of error, Mr. Fuller argues that Mr. Towbin did not establish a prima facie case under La. Rev. Stat. 18:492(A)(7). We disagree.

Louisiana Revised Statutes 18:492 sets forth the exclusive grounds for disqualification of an election candidate. In this matter, Mr. Towbin's challenge is based on La. R.S. 18:492(A)(7), which provides:

> A. An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on one or more of the following grounds:
>
> * * *
>
> (7) The defendant falsely certified on his notice of candidacy that for each of the previous five tax years he has filed his federal and state income tax returns, has filed for an extension of time for filing either his federal or state income tax return or both as provided in R.S. 18:463(A)(2), or was not required to file either a federal or state income tax return or both.

According to Mr. Fuller's filed Notice of Candidacy, he attested to filing his federal and state tax returns for the previous five years. The LDR affidavit offered by Mr. Towbin serves as prima facie evidence that Mr. Fuller had not filed his Louisiana state tax returns for 2020. *See Collins v. Chambers*, 2024-01005, p. 4 (La. 8/20/24), 390 So. 3d 1282, 1285 (finding that a sworn affidavit from an LDR employee "established a prima facie case under La. R.S. 18:492(A)(7)."). At that point, the burden shifted to Mr. Fuller to prove that he did not falsely certify that he filed his Louisiana taxes for the previous five tax years.

To rebut Mr. Towbin's prima facie showing, Mr. Fuller presented at trial: testimony from Mr. Madison, Ms. Taylor, and himself, each of whom attested to believing that the 2020 tax return was filed; copies of his 2020 Louisiana tax

returns; an email from Mr. Madison transmitting the invoice for preparing the 2020 tax return; a text message exchange between Mr. Fuller and Mr. Madison from the day of qualification, wherein Mr. Madison stated that filings were current except for a 2022 amended State return needing a signature; and a July 2, 2024 email from Mr. Madison stating that the last tax return he did was 2020, identifying only 2021 through 2023 as potentially outstanding.

The district court found that Mr. Fuller's evidence was insufficient to rebut Mr. Towbin's prima facie case. We agree.

Mr. Fuller failed to present any documentary evidence proving his tax returns were transmitted, filed, or received by the LDR. The aforementioned circumstantial evidence submitted by Mr. Fuller at trial simply shows Mr. Fuller *believed* that the 2020 Louisiana tax return was filed. This Court has previously found that a candidate's belief that he filed his tax returns is insufficient to rebut a plaintiff's prima facie case showing that he in fact did not. For instance, in *Smith v. Charbonnet*, this Court concluded that it was an error of law for the trial court to consider the defendant's state of mind in deciding whether he made a false certification. 2017-0634, p. 7 (La. App. 4 Cir. 8/2/17), 224 So. 3d 1055, 1059-60.

In *Smith*, the plaintiffs alleged that the defendant falsely certified in his Notice of Candidacy form that he had filed his state income tax returns for the previous five years. *Id.*, 2017-0634, p. 2, 224 So. 3d at 1057. A representative of the LDR testified at trial that the LDR's computer system could not confirm that defendant filed his state tax returns in 2012 and 2016. *Id.*, 2017-0634, p. 3, 224 So. 3d at 1058. The defendant averred that his CPA's employee confirmed his 2012 tax returns had been filed and that extensions had been filed for his 2016 returns. Therefore, "when he signed the Notice of Candidacy form, he was 'very confident'

10

that his 2012-2016 taxes had been paid based on his reliance on assurances from his CPA." *Id.* The defendant's wife testified at trial that she personally dropped the defendant's 2012 tax returns in the mail box at the post office. *Id.*, 2017-0634, p. 4, 224 So. 3d at 1058. However, the defendant admitted that he had no evidence the returns were ever delivered to the LDR. *Id.* 2017-0634, p. 3, 224 So. 3d at 1058.

This Court reasoned that the *Smith* defendant's "lack of intent to deceive based on his good faith reliance on assurances from his CPA that his tax returns had, in fact, been filed, is irrelevant." *Id.*, 2017-0634, p. 6, 224 So. 3d at 1059. Instead, the Court relied on Louisiana Supreme Court jurisprudence establishing that in order for a candidate to rebut a prima facie showing that income tax returns were not filed, the candidate must satisfy the LDR's regulations regarding the filing of income tax returns set forth in La. Admin. Code tit. 61, pt. I, § 4911(B)(1): "'Delivery by the United States Postal Service. A return, report or other document in a properly addressed envelope with sufficient postage delivered by the United States Postal Service is deemed filed on the date postmarked by the United States Postal Service.'" *Id.*, 2017-0634, p. 6, 224 So. 3d at 1059 (quoting *Russo v. Burns*, 2014-1963, p. 4 (La. 9/24/14), 147 So. 3d 1111, 1114). Accordingly, this Court reasoned that "[r]eturns which have not been delivered to LDR by the United States Postal Service have not been filed pursuant to this clear language." *Id.* (citing *Russo*, 2014-1963, p. 4, 147 So. 3d at 1114). Because the *Smith* defendant could not prove that his tax returns were mailed or delivered to the LDR, meaning they were "not filed" per La. Admin. Code tit. 61, pt. I, § 4911(B)(1), he failed to overcome the plaintiff's prima facie showing. *Id.*

So too here. Mr. Fuller did not present documentary evidence demonstrating that his 2020 Louisiana tax returns were transmitted, filed, or received by the LDR.

11

Like the defendant in *Smith*, Mr. Fuller's evidence only illustrated through circumstantial evidence his personal belief that the 2020 tax returns were filed. Mr. Fuller's belief was rooted solely in representations by Mr. Madison, his accountant, and Ms. Taylor, his secretary. Such personal belief is ultimately irrelevant to this analysis.

At trial, Ms. Taylor could only testify that she dropped the returns off in the USPS mailroom of Mr. Fuller's office building. Mr. Fuller offered no evidence, such as a certificate of mailing, proving that the returns were indeed mailed. A similar circumstance existed in *Smith*, wherein the defendant's wife testified that she personally dropped the defendant's 2012 tax returns in the mail box at the post office. 2017-0634, p. 4, 224 So. 3d at 1058. This Court in *Smith* echoed the Louisiana Supreme Court's view that mailing tax returns via certified mail is one way to ensure their delivery to the LDR and is thus sufficient to demonstrate their filing. *Id.*, 2017-0634, p. 6, 224 So. 3d at 1059 (quoting *Russo*, 2014-1963, p. 4, 147 So. 3d at 1114). Neither the defendant's wife in *Smith* nor Ms. Taylor, in the case at hand, mailed the tax returns via certified mail. The *Smith* Court found that the wife's testimony did not sufficiently evince filing of the defendant's 2012 tax returns. *Id.*, 2017-0634, p. 6, 224 So. 3d at 1059. Accordingly, here, Ms. Taylor's testimony is insufficient to rebut Mr. Towbin's prima facie showing that Mr. Fuller did not file his 2020 Louisiana tax returns.

Mr. Fuller has likewise produced no proof that the LDR actually received the 2020 tax return. Seeing as Mr. Towbin filed this suit on February 22, 2026, and trial took place on February 25, 2026, Mr. Fuller had the opportunity to contact the LDR or could have driven to Baton Rouge to obtain confirmation of receipt from

the LDR prior to trial. However, he failed to obtain this necessary proof to rebut Mr. Towbin's prima facie showing.

We pretermit discussion of Mr. Fuller's remaining assignments of error because our foregoing discussion is dispositive of this appeal.

In sum, per Louisiana jurisprudence, Mr. Fuller's evidence was insufficient to rebut Mr. Towbin's prima facie showing that Mr. Fuller's 2020 Louisiana tax returns were not filed at the time he signed his Notice of Candidacy on February 13, 2026. We find no manifest error in the district court's determination that Mr. Fuller's state tax return for 2020 had not been filed when he signed his Notice of Candidacy.

## CONCLUSION

For the foregoing reasons, we affirm the district court's February 25, 2026 district court judgment disqualifying Mr. Fuller as candidate for the office of Judge, Criminal District Court, Section J, Orleans Parish.

**AFFIRMED**